# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **DIANN H. ANGUS,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:20-CV-00242-LY-SH** |
| **ALEJANDRO MAYORKAS,** | § | |
| **DIRECTOR OF THE** | § | |
| **DEPARTMENT OF** | § | |
| **HOMELAND SECURITY,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE LEE YEAKEL
### UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion for Summary Judgment (Dkt. 70) and Plaintiff's Memorandum in Support of Summary Judgment (Dkt. 71), both filed February 7, 2022; Defendant's Motion for Summary Judgment, filed February 14, 2022 (Dkt. 76); Defendant's Response to Plaintiff's Motions for Summary Judgment, filed February 16, 2022 (Dkt. 77); Plaintiff's Response to Defendants' Objection for Summary Judgment (Dkt. 78) and Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dkt. 79), both filed February 22, 2022; and Defendant's Reply in Support of Motion for Summary Judgment (Dkt. 80), filed March 1, 2022. The District Court referred all nondispositive and dispositive motions in this case to the undersigned Magistrate Judge for resolution and Report and Recommendation, respectively, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 15.

## I.    Background

Plaintiff Diann Angus, proceeding *pro se*, is a federal employee who applied unsuccessfully for three job openings posted by Immigration and Customs Enforcement (ICE), an agency in the Department of Homeland Security (DHS). She is currently employed by ICE as an Enforcement Removal Assistant. Dkt. 76-2 at 9 (Angus Tr. 24:6-10).

In 2012, Plaintiff applied for the positions of Intelligence Research Specialist and Intelligence Assistant. Dkt. 1 ¶¶ 17, 23; Dkt. 76-13 at 2-3 (Brake Decl. ¶¶ 2, 4). DHS intelligence research work requires effective verbal and written communication, knowledge of strategic intelligence techniques, intelligence policies and management principles, and experience with evaluating volatile and ambiguous situations to successfully resolve conflicts. Dkt. 76-8 at 4 (Ashurst Statement ¶ 5(b)).

To fill vacant positions, ICE prepares a "certificate" for each category of eligible candidate. Plaintiff was placed on the competitive service "merit selection" certificate for both positions, despite her request to be considered as a "Schedule A" applicant due to a disability.[1] Dkt. 76-13 at 3-4 (Brake Decl. ¶¶ 4-6). Her applications were forwarded to the selecting official, Special Agent in Charge for San Antonio Homeland Security Investigations Jerry Robinette. Dkt. 76-11 at 2 (Robinette Decl. ¶ 1). There were more than 100 applicants on the selection certificates for the Intelligence Research Specialist position. *Id.* at 3 (Robinette Decl. ¶ 3). Robinette designated Assistant Special Agent in Charge Sammy Ashurst and Supervisory Intelligence Officer David Salazar to screen resumes, conduct applicant interviews, and make final recommendations for the Position. *Id.*

---

[1] Applicants for federal positions may be eligible for listing on a Schedule A certificate if they have a certified mental or physical disability or satisfy other criteria. *See* 5 C.F.R. §§ 213.3101, § 213.3102(u).

The four selected candidates, A.K., R.K., J.W., and N.R.,[2] had the following qualifications:

- A.K. held a Bachelor of Science degree, graduated with a 3.9 GPA, and taught courses in technology and military science. Dkt. 76-4 at 3. A.K. worked with ICE through the Texas Air National Guard as a criminal investigative analyst, served 10 years in the military, and had 13 years of experience in the intelligence field. *Id.* at 2-3.

- R.K. worked with ICE Intelligence Research Specialists through his role as an analyst consultant with a private contractor. Dkt. 76-5 at 2. He also served in the United States Marine Corps as a cryptologist, Arabic linguist, and a reconnaissance expert deployed in the Middle East. *Id.* at 3. R.K. was completing his bachelor's degree when he applied. *Id.* at 2.

- J.W. was employed with ICE as a mission support specialist and previously served in the United States Air Force as a security forces instructor. Dkt. 76-6 at 2-4. He held an associate degree in Instruction of Technology and Military Science and was a disabled veteran with a 10-point veteran's preference due to a disability connected to his service. *Id.* at 2, 4. J.W. had a military intelligence background and was regarded as a highly motivated, capable, reliable, and dependable employee. Dkt. 76-11 at 3 (Robinette Decl. ¶ 4); Dkt. 76-14 at 5 (Ashurst Decl. ¶ 7).

- N.R. held a Bachelor of Science degree from the United States Air Force Academy. Dkt. 76-7 at 3. N.R. served as United States Army military intelligence officer and as a military intelligence company commander in Iraq. *Id.* at 2-3.

There were 61 applicants for the Intelligence Assistant position. Dkt. 76-11 at 7 (Robinette Decl. ¶ 11). Robinette selected J.C. to fill the position. *Id.* at 4-5 (Robinette Decl. ¶ 6). J.C. was a GS-14 Administrative Officer in the Houston ICE Office who was relocating to Austin, which prompted her to apply for the open position. *Id.* J.C. had 28 years of federal service and a master's degree. *Id.*; Dkt. 76-12 at 2-9. Robinette stated that J.C.'s experience as an Administrative Officer in the Houston ICE Office "would not only provide a highly qualified Intelligence Assistant, but would additionally provide a highly advantageous resource to the Austin office in that [she] would

---

[2] The Court uses acronyms to refer to the selectees to preserve the confidentiality of their application materials, which are marked "Confidential" under the Protective Order. Dkt. 52.

be available to provide expert guidance to managers on common administrative issues that frequently arise such as personnel, purchasing and other administrative support matters." Dkt. 76-11 at 4-5 (Robinette Decl. ¶ 6).

Plaintiff graduated from Louisiana Tech University with a 2.3 GPA and an associate degree in liberal arts. Dkt. 76-2 at 16-17 (Angus Tr. 42:21-25, 43:5-20); Dkt. 76-3 at 7. Plaintiff has never served in the military nor held a position in intelligence. *Id.* at 1-9. At the time of her 2012 applications, Plaintiff was a GS-8 with 16 years of federal service. Dkt. 76-2 at 37, 64 (Angus Tr. 63:17-18, 104:23-25, 105:1). Ashurst "noticed numerous punctuation and grammatical errors" in the resume Plaintiff submitted. Dkt. 76-14 at 4(Ashurst Decl. ¶ 5).

On October 16, 2012, Plaintiff was informed via an automatically generated disposition letter sent by email that she had not been selected for the Intelligence Research Specialist position. Dkt. 76-2 at 44 (Angus Tr. 70:1-25); Dkt. 76-10. Plaintiff also was not selected for the Intelligence Assistant position. Dkt. 76-2 at 62-63 (Angus Tr. 95:17-25, 96:1-5). On December 4, 2012, she contacted an EEO Counselor regarding her non-selections. *Id.* at 45 (Angus Tr. 71:18-21).

On March 19, 2013, Plaintiff filed a formal complaint with the ICE Equal Employment Opportunity Office (ICE EEO), alleging that her non-selection for the Intelligence positions was the result of discrimination based on her sex, age, and physical or mental disability, and in retaliation for prior EEO activity. Dkt. 76-16 at 3 ¶ 3. Plaintiff had filed an earlier EEO complaint relating to her non-selection for an ICE position in 2010 or 2011, which formed the basis of her retaliation claim. Dkt. 1 ¶¶ 123, 142 (alleging that prior EEO complaint was in 2010); Dkt. 76-2 at 11-12 (Angus Tr. 37:14-25, 38:1-14) (stating that prior EEO complaint was in 2011). EEO investigated Plaintiff's allegations. Dkt. 76-18. During the investigation, the EEO investigator contacted Robinette, who had retired from ICE, by email. *Id.* Robinette stated:

4

> As a general response to the allegations, all [I] can say is that I don't know exactly what disability or protective group she is claiming discrimination over. [I] can assure you my selection of candidates were based on who [was] the best candidate for the overall job and position. My recollection is that this employee use[d] to work for one of my offices and left of her own decision to work for DEA [I] believe. She apparently left DEA and has been applying for multiple vacancies and when not selected she files a discrimination allegation. I stand behind the selections and re-state that [I] did not discriminate or retaliate against this applicant.

*Id.* at 2.

Although Plaintiff initially requested a hearing before the Equal Employment Opportunity Commission (EEOC), she withdrew the request and asked that her case be remanded to DHS for a Final Agency Decision. Dkt. 76-16 at 3. In January 2019, DHS issued a Final Agency Decision concluding that ICE did not discriminate against Plaintiff and dismissed Plaintiff's complaint as untimely. *Id.* at 13. Plaintiff appealed to the EEOC's Office of Federal Operations, which affirmed the decision. Dkt. 76-17 at 5.

In 2016, Plaintiff applied to ICE a third time, for the position of an Investigative Research Specialist. Dkt. 1 ¶ 46; Dkt. 76-2 at 70-71 (Angus Tr. 116:23-25, 117:1-13). Ashurst served as the selecting official for the Investigative Research Specialist position; he included in the selection process Group Supervisor T.W. and Assistant Special Agent in Charge M.M. Dkt. 76-20 at 5 (Folden Aff. ¶¶ 23, 25). Ashurst sought a candidate with experience in and knowledge of intelligence-related databases and the Homeland Security Investigations National Security Group and Financial Group. *Id.* at 6 (Folden Aff. ¶ 26). Ashurst ultimately selected T.H. to fill the position. Dkt. 76-24 at 4. T.H. had served as an intelligence research specialist for the U.S. Coast Guard, an open-source intelligence analyst with the U.S. Marine Corps Cyber Command, and an all-source intelligence analyst at the U.S. Northern Command. Dkt. 76-21 at 5-6. T.H. also worked as a deputy branch manager at Signals Intelligence (SIGINT) Geospatial Analyst Cell for the

Narcotics Operations Support Branch, an Officer in Charge of a SIGNIT Detachment in Guantanamo Bay, and a Senior Spanish and Quality Control Linguist for the National Security Agency's Central Security Service. *Id.* at 6. T.H. holds a Bachelor of Science degree and is fluent in Spanish and Portuguese. *Id.*

On January 24, 2017, Plaintiff received an automatically generated disposition letter sent via email informing her that she had not been selected for the Investigative Research Specialist position. Dkt. 1 ¶ 47; Dkt. 76-2 at 82-83 (Angus Tr. 128:22-25, 129:1-2); Dkt. 76-22. The same day, Plaintiff submitted a Freedom of Information Act (FOIA) request to ICE regarding her non-selection. Dkt. 1 ¶ 47; Dkt. 76-2 at 83 (Angus Tr. 129:8-20). On May 4, 2017, Plaintiff contacted an EEO Counselor. *Id.* at 84 (Angus Tr. 130:4-17); Dkt. 76-19 at 2.

In 2017, Plaintiff filed another formal complaint with ICE EEO, alleging age and sex discrimination and retaliation. *Id.* at 3. Plaintiff requested a hearing before the EEOC, but subsequently withdrew the request to file an action in federal district court. *Id.* On February 19, 2020, the DHS issued a Final Agency Decision affirming the dismissal of Plaintiff's case based on her intent to file a federal action. *Id.* at 3-4.

On March 6, 2020, Plaintiff filed suit, alleging that her non-selection for the three positions was the result of multiple forms of illegal discrimination in ICE's hiring process and retaliation for her participation in protected activities. Dkt. 1. In her 49-page original complaint, Plaintiff asserted fifteen overlapping "counts" against Defendant. Her allegations can be condensed into the following claims: (1) disability discrimination under Title II of the Americans with Disabilities Act (ADA); (2) failure to properly process and investigate her previous equal employment opportunity complaints; (3) sex discrimination under Title VII of the Civil Rights Act of 1964 (Title VII); (4) age discrimination under the Age Discrimination in Employment Act of 1967

(ADEA); and (5) retaliation under Title VII. The Court dismissed all but Plaintiff's Title VII retaliation claim (Count 12) for failure to state a claim under Rule 12(b)(6). Dkt. 27.

Both parties now move for summary judgment on Plaintiff's remaining claim.

## II.    Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party

opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

On cross-motions for summary judgment, the Court reviews each party's motion independently, in the light most favorable to the nonmoving party. *Amerisure Ins. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

### III.   Defendant's Motion for Summary Judgment

#### A.  Summary Judgment Record

ICE submitted the following summary judgment evidence:

1) Transcripts from the Deposition of Diann Angus (Exh. 1, Dkt. 76-2);

2) Angus Resume (Exh. 2, Dkt. 76-3);

3) Selectee A.K. Resume (Exh. 3, Dkt. 76-4);

4) Selectee R.K. Resume (Exh. 4, Dkt. 76-5);

5) Selectee J.W. Resume (Exh. 5, Dkt. 76-6);

6) Selectee N.R. Resume (Exh. 6, Dkt. 76-7);

7) Sworn Statement of Sammy Ashurst (Exh. 7, Dkt. 76-8);

8) Sworn Statement of David Salazar (Exh. 8, Dkt. 76-9);

9) 2012 Notice of Non-Selection (Exh. 9, Dkt. 76-10);

10) Declaration of Jerry Robinette (Exh. 10, Dkt. 76-11);

11) Selectee J.C. Resume (Exh. 11, Dkt. 76-12);

12) Declaration of Peggy J. Brake (September 2014) (Exh. 12, Dkt. 76-13);

13) Declaration of Sammy H. Ashurst (Exh. 13, Dkt. 76-14);

14) Declaration of Peggy J. Brake (November 2019) (Exh. 14, Dkt. 76-15);

15) 2019 Final Agency Decision (Exh. 15, Dkt. 76-16);

16) EEOC Office of Federal Operations Order (Exh. 16, Dkt. 76-17);

17) EEOC Investigator's Email Exchange (Exh. 17, Dkt. 76-18);

18) 2020 Final Agency Decision (Exh. 18, Dkt. 76-19);

19) Affidavit of Former Special Agent in Charge Shane Folden (Exh. 19, Dkt. 76-20);

20) Selectee T.H. Resume (Exh. 20, Dkt. 76-21);

21) 2017 Notice of Non-Selection (Exh. 21, Dkt. 76-22);

22) Angus Sworn Statement (Exh. 22, Dkt. 76-23); and

23) 2016 "Certificate of Eligibles" (Exh. 23, Dkt. 76-24).

In response to ICE's motion, Plaintiff submitted the following evidence:

1) Declaration of Peggy J. Brake (Exh. 1, Dkt. 79-1 at 3-4);

2) Sworn Statement of Peggy Brake (Exh. 2, Dkt. 79-1 at 5-6);

3) A copy of the Office of Personnel Management webpage regarding Veterans' Preference in Appointments (Exh. 3, Dkt. 79-1 at 7-8);

4) Selectee J.W.'s SF-50 Document (Exh. 4, Dkt. 79-1 at 9-10);

5) Proposal for the High Intensity Drug Trafficking Areas ("HIDTA") Designation of McLennan County, Texas (Exh. 5, Dkt. 79-1 at 11-34);

6) Affidavit of Jonas Ybarra, Jr. (Exh. 6, Dkt. 79-1 at 35-37);

7) Brad Rollins, *Staples woman sentenced in smuggling case*, SAN MARCOS MERCURY (Exh. 7, Dkt. 79-1 at 38-41);

8) ICE Intelligence Assistant (OA) job posting (Exh. 8, Dkt. 79-1 at 42-43);

9) Occupational Questionnaire for Investigative Assistant (Exh. 9, Dkt. 79-1 at 44-45); and

10) Email from Carol Kline to Angus dated November 17, 2012 (Exh. 10, Dkt. 79-1 at 46-47).

9

### B. Analysis

ICE moves for summary judgment on the grounds that (1) Plaintiff's retaliation claims relating to her non-selection for the Intelligence Research Specialist and Investigative Research Specialist positions fail because she did not exhaust her administrative remedies; and (2) the selected candidates for all three ICE positions were hired because they had qualifications significantly superior to Plaintiff's, rather than in retaliation for her engagement in protected activity. Plaintiff argues that ICE has failed to meet its burden to show a legitimate, non-retaliatory reason for making selections for the three positions.[3]

### 1. Exhaustion of Administrative Remedies

Exhaustion of administrative remedies is a prerequisite to filing suit under Title VII. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). To exhaust administrative remedies, a federal employee plaintiff first must comply with the EEO regulations set forth in 29 C.F.R. § 1614.105. *Ikekwere v. Mnuchin*, No. 1:15-CV-418-DAE, 2017 WL 4479614, at *4 (W.D. Tex. May 15, 2017). Under Section 1614.105(a)(1), federal employees must "initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." Generally, failure to initiate contact within the 45-day limitations period and exhaust administrative remedies will bar subsequent judicial review of a claim in federal court. *Pacheco v. Mineta*, 448 F.3d 783, 791 n.11 (5th Cir. 2006). Non-selection is a discrete act that requires separate reporting, even if it is related to acts alleged in a timely filed charge. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (stating that refusal to hire is a "discrete act" and "each retaliatory adverse employment

---

[3] Much of Plaintiff's response is devoted to disability discrimination claims previously dismissed by the District Court. Dkt. 79. This Report and Recommendation addresses only the arguments and evidence relating to Plaintiff's remaining claim for retaliation.

decision constitutes a separate actionable unlawful employment practice"); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (stating that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges") (citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113).

### a.  Intelligence Research Specialist (2012)

Plaintiff was notified of her non-selection for the Intelligence Research Specialist position on October 16, 2012, and did not contact an EEO Counselor until December 4, 2012, 49 days after the alleged act of retaliation. Dkt. 76-2 at 44-45 (Angus Tr. 70:1-25, 71:18-21); Dkt. 76-10. Plaintiff argues that the "effective date" of her non-selection was the date the selectees "assumed their acting assignments." Dkt. 79 at 17. But "a non-selection claim accrues from the date of the actual non-selection." *Ortega v. Chertoff*, 600 F. Supp. 2d 828, 835 (W.D. Tex. 2008) (citing *Vadie v. Miss. State. Univ.*, 218 F.3d 365, 371) (5th Cir. 2000).

There is no dispute of material fact that Plaintiff failed to contact an EEO counselor within 45 days of her non-selection. Therefore, the undersigned Magistrate Judge recommends that the District Court grant summary judgment that Plaintiff's claim relating to the Intelligence Research Specialist position is barred from judicial review due to her failure to exhaust administrative remedies.

### b.  Investigative Research Specialist (2016)

Plaintiff was notified of her non-selection for the Investigative Research Specialist position on January 24, 2017, and filed her FOIA request regarding her non-selection the same day. *See* Dkt. 1 ¶ 47 (stating that "Plaintiff received the non-selection notice January 24, 2017"). She did not contact an EEO Counselor until May 4, 2017, 100 days after the date of the alleged act of retaliation.

In her response, Plaintiff argues that she only "became aware" of her non-selection on April 15, 2017, citing Exhibit 10. Dkt. 79 at 17-18. Exhibit 10 to Plaintiff's summary judgment motion is an email dated November 17, 2012, which contains no evidence regarding her non-selection in 2017. Dkt. 79-1 at 46-47. It appears that Plaintiff intended to cite her Exhibit 23, a page taken from an EEO Counselor's Report. Dkt. 71-2 at 65-66. The page lists the "Date of Allegedly Discriminatory Event" as April 15, 2017, and calculates the "Deadline for Timely Contact" as May 30, 2017. *Id.* at 66. As discussed above, the 45-day limitation period begins from the date of non-selection, not from the date Plaintiff contends that she became aware of it.

Because Plaintiff submitted no evidence that she contacted the EEO Counselor within 45 days of her January 24, 2017 non-selection for the Investigative Research Specialist position, there is no dispute of material fact that she failed to exhaust her administrative remedies. Accordingly, the undersigned Magistrate Judge recommends the District Court grant summary judgment that Plaintiff's claim relating to the Investigative Research Specialist position is barred from judicial review.

### 2. Retaliation Claim

Plaintiff's remaining retaliation claim arises from her non-selection for the Intelligence Assistant position in 2012. Plaintiff alleges she was not selected for the 2012 Intelligence Assistant position in retaliation for her previous EEO complaint in 2010 or 2011.

Absent direct evidence of discriminatory intent, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine the reason for non-selection:

> Once an employee propounds a *prima facie* case of interference or retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Thereafter, the burden shifts back to the employee to show

> by a preponderance of the evidence that the employer's articulated
> reason is a pretext for discrimination.

*Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019) (citations omitted).

### a. Prima Facie Case

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). An adverse employment action consists of ultimate employment decisions, such as hiring, granting leave, discharge, promotion, or compensation. *Pegram,* 361 F.3d at 282. A causal link exists when the employer's action was based in part on knowledge of the employee's protected activity. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). A plaintiff need not prove that her protected activity was the sole factor motivating the adverse employment decision. *Long*, 88 F.3d at 305 n.4.

For purposes of its motion, ICE assumes, but does not concede, that Plaintiff can establish a prima facie case for retaliation. Dkt. 76 at 22. Accordingly, the burden shifts to ICE to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Long*, 88 F.3d at 304-05.

### b. Legitimate, Nondiscriminatory Reason

ICE submitted the following evidence that J.C., the candidate selected for the Intelligence Assistant position in 2012 position, possessed qualifications superior to Plaintiff's:

- J.C. had 28 years of federal service, compared to Plaintiff's 16 years;

- J.C. had a master's degree, compared to Plaintiff's associate degree;

- J.C. was a current ICE employee, while Plaintiff was not;

- J.C. was a GS-14, while Plaintiff was a GS-8; and

- J.C. had served as an ICE Administrative Officer; Plaintiff had not.

Dkt. 76 at 22; Dkt. 76-2 at 37, 64 (Angus Tr. 63:17-18, 104:23-25, 105:1); Dkt. 76-3; Dkt. 76-11 at 4-5 (Robinette Decl. ¶ 6); Dkt. 76-12.

An employer's decision to hire a better qualified individual is a legitimate, nondiscriminatory reason for another applicant's denial. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 n.2 (5th Cir. 2002); *Longo v. Chao*, 536 F. Supp. 2d 729, 738 (W.D. Tex. 2008). The evidence ICE cites clearly supports its argument that it selected J.C. because of her superior qualifications. Accordingly, ICE has met its burden to establish a legitimate, non-retaliatory reason for Plaintiff's non-selection.

### c. Pretext

The burden now shifts back to Plaintiff to show that ICE's articulated reason for her non-selection is a pretext for retaliation. Plaintiff first argues that ICE has provided "six separate reasons for Plaintiff's three non-selection cases" and "five different shifting explanations," which she contends is evidence of pretext. Dkt. 79 at 1. Plaintiff's arguments relate to her previously dismissed disability discrimination claims based on ICE's failure to use a Schedule A certificate. *Id.* at 8-9.

Next, Plaintiff provides additional information regarding the work experience cited in her resume and education she has undertaken since her 2012 application. *Id.* at 9-11; Dkt. 79-1 at 11-34, 38-41. She submits the affidavit of Jonas Ybarra, Jr., a friend and former colleague, who attests to the assistance she provided him while he was an ICE Deportation Officer in Waco, Texas. *Id.* at 36-37. To the extent Plaintiff attempts to argue that she was more qualified than J.C., the evidence is insufficient to establish pretext because it does not show that Plaintiff clearly was more qualified than J.C. *See Price*, 283 F.3d at 723 (stating that to establish pretext, the losing

candidate's qualifications must "leap from the record and cry out to all who would listen that [s]he was vastly—or even clearly—more qualified for the subject job") (citation omitted); *Deines v. Tex. Dep't of Protective & Regul. Servs.*, 164 F.3d 277, 282 (5th Cir. 1999) (stating that an employer's judgment as to qualifications "will not be probative of the issue of a discriminatory motive unless the qualifications are so widely disparate that no reasonable employer would have made the same decision").

Finally, Plaintiff argues that J.C. worked in Houston but falsely stated in her application that she lived and worked in the Austin area. Dkt. 79 at 12-13; Dkt. 79-1 at 42-45. Plaintiff does not explain how a misstatement in J.C.'s application shows that ICE's claim it selected J.C. due to her superior qualifications is mere pretext for retaliation against Plaintiff.

In conclusion, Plaintiff has failed to meet her burden to produce evidence creating a fact issue regarding pretext. The undersigned Magistrate Judge therefore recommends that the District Court grant ICE's motion for summary judgment on Plaintiff's retaliation claim.

## IV.     Plaintiff's Motion for Summary Judgment

Because Defendant's motion for summary judgment resolves Plaintiff's only remaining claim, the Court recommends that the District Court dismiss Plaintiff's Motion for Summary Judgment as moot.

## V.     Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment (Dkt. 76) and enter judgment for Defendant on Plaintiff's Title VII retaliation claim.

The Court **FURTHER RECOMMENDS** that the District Court **DISMISS AS MOOT** Plaintiff's Motion for Summary Judgment (Dkt. 70).

15

## VI.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 29, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE